IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES | : | CRIMINAL ACTION |
| | : | |
| v. | : | NO. 07-99 |
| | : | |
| ALONZO WALLACE | : | |

### MEMORANDUM AND ORDER

**Kauffman, J.**                                                                                        September 12, 2007

      Defendant Alonzo Wallace has submitted a Motion for Suppression of physical evidence obtained on November 2, 2006, following an investigatory stop and frisk performed by a Philadelphia Police Officer.  An evidentiary hearing was conducted before this Court on September 5, 2007.  For the reasons that follow, the Motion will be denied.

**I.     BACKGROUND**

      On or about November 2, 2006, at approximately 8:45 p.m., Philadelphia Police Officers Gregory Stevens and Sharon Corrado, along with several members of the Philadelphia Court Warrant Unit, were driving their vehicles in the area of 27th and Oakford Streets in Philadelphia. This area was known to the police officers as a "high crime area" due to drug distribution, illegal gun possession, robberies, shootings, and other crimes.  At the time, the officers were in uniform and were looking for persons wanted on bench warrants.  Officers Corrado and Stevens were traveling in an unmarked vehicle with a warrant officer, and their vehicle was followed by another unmarked vehicle and two police cruisers.

As the officers approached 27th and Oakford Streets, they observed three males on the northeast corner. Because the officers believed one of the individuals was wanted for an outstanding warrant, they decided to pull over and investigate. Upon doing so, the officers recognized one of the males as Nieem Thomas, who they knew as a gun-carrying drug dealer from another Philadelphia neighborhood.[1] They also noticed Thomas's vehicle, which was parked across the street with the engine running. Officer Corrado found this significant because she had information that Thomas often sold controlled substances out of his vehicle. The third male in the group was Defendant Wallace.

As the officers approached, the men first looked in their direction and then rushed into a nearby corner store. Officer Corrado followed the men into the store and stopped Thomas as well as the suspected fugitive. She then ordered the two men out of the store to where Officer Stevens and the other officers were waiting. Wallace, who was standing near the counter in the store, appeared nervous, looking back and forth at Officer Corrado.

Using a loud voice, Officer Corrado ordered Wallace to come to where she was standing. Wallace ignored her instruction. When Officer Corrado repeated the command, Wallace began to walk towards her with his hands in the air. Officer Corrado noticed a bulge in Wallace's waistband beneath his shirt. Based on her training and experience, Officer Corrado suspected that this bulge was a firearm. For her safety and the safety of others in the store, she then conducted a patdown of Wallace. When she touched the area of his waistband where the bulge was located, she felt and removed a Smith & Wesson model SW40VE .40 caliber pistol. The

---

[1] The Court finds the testimony of Officer Corrado credible and will rely on the facts as she described them in ruling on the Motion for Suppression.

weapon was loaded with fourteen rounds, and the serial number on the frame had been removed. The officers then arrested Wallace, who had no license to carry the weapon.

## II.     DISCUSSION

In the Motion for Suppression, Wallace argues that he was stopped and searched in violation of the Fourth Amendment.[2]  As the Supreme Court has explained, "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." Illinois v. Wardlow, 528 U.S. 119, 123 (2000) (citing Terry v. Ohio, 392 U.S. 1, 30 (1968)); see also United States v. Cortez, 449 U.S. 411, 417 (1981) ("An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity."). Reasonable suspicion "is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence," Wardlow, 528 U.S. at 123, although an officer may not justify a stop based on an "inchoate and unparticularized suspicion or 'hunch.'" Terry, 392 U.S. at 27.  In determining whether the reasonable suspicion standard has been met, "the totality of the circumstances—the whole picture—must be taken into account." Cortez, 449 U.S. at 417.  The Third Circuit has found that the "totality of the circumstances" may include the location of the defendant, the history of crime in that location, the defendant's nervous behavior,

---

[2]     Although Wallace argues that the officers' conduct violated both the Federal and the Pennsylvania Constitutions, the Court need only consider federal law in ruling on the Motion for Suppression. See, e.g., United States v. Rickus, 737 F.2d 360, 363-64 (3d Cir. 1984) ("[E]vidence obtained in accordance with federal law is admissible in federal court—even though it was obtained by state officers in violation of state law." (citing United States v. Shaffer, 520 F.2d 1369, 1372 (3d Cir. 1975))).

and the police officer's observations and judgments about human behavior. Johnson v. Campbell, 332 F.3d 199, 206 (3d Cir. 2003).

In the instant case, the Court finds that Officer Corrado had reasonable suspicion sufficient to conduct an investigatory stop. First, Wallace's apparent attempt to evade the officers by rushing into the store supports a finding of reasonable suspicion, given the fact that the stop occurred in a high crime area. In Wardlow, the Supreme Court held that unprovoked flight from approaching police officers in a high crime neighborhood is sufficient to support an investigatory stop. See 528 U.S. at 124-25; see also United States v. Shambry, 392 F.3d 631, 633 (3d Cir. 2004) (following Wardlow and finding that the stopping officer had "reasonable suspicion for a stop and frisk because of [the defendant's] presence in a high crime area coupled with his unprovoked flight from the police"). Because Wallace rushed into the store apparently to evade the approaching officers, and because the incident took place in a high crime area, Officer Corrado's investigatory stop was justified under the principles announced in Wardlow. Moreover, Officer Corrado recognized one of Wallace's companions as a known criminal. See United States v. Coggins, 986 F.2d 651, 655 (3d Cir. 1993) ("Mere association with a known criminal cannot on its own be a basis for a 'reasonable suspicion.' . . . Yet, when such association is combined with the other elements articulated by [the officer] and considered by the district court, a reasonable suspicion adequate to support an investigative detention may indeed arise." (citation omitted)). Thus, the Court finds that Officer Corrado's stop, when viewed in the totality of the circumstances, was supported by reasonable suspicion. See, e.g., United States v. Brown, 159 F.3d 147, 149-50 (3d Cir. 1998) (upholding a warrantless stop and frisk where the defendant

fled from police officers in a high crime area after two of his companions were stopped and frisked).

Officer Corrado's decision to conduct a patdown was also supported by reasonable suspicion. Under Terry v. Ohio, a police officer may conducted a limited patdown of an individual when the officer "is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others." 392 U.S. at 24. The Terry Court further explained that "[t]he officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Id. at 27. In the instant case, Officer Corrado observed a bulge in Wallace's waistband and was justified in performing a frisk because she reasonably suspected that the bulge was a firearm. See, e.g., Pennsylvania v. Mimms, 434 U.S. 106, 112 (1977) ("The bulge in the jacket permitted the officer to conclude that Mimms was armed and thus posed a serious and present danger to the safety of the officer. In these circumstances, any man of 'reasonable caution' would likely have conducted the 'pat-down.'"). Given Wallace's nervous behavior, the "high crime area," and Officer Corrado's reasonable suspicion that Wallace was armed, the Court finds that the frisk of Wallace was proper under the circumstances.

### III. CONCLUSION

For the foregoing reasons, the Court will deny Defendant's Motion for Suppression. An appropriate Order follows.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES** | : | **CRIMINAL ACTION** |
| | : | |
| v. | : | NO. 07-99 |
| | : | |
| **ALONZO WALLACE** | : | |

## ORDER

**AND NOW**, this 12th day of September, 2007, upon consideration of Defendant's Motion for Suppression (docket no. 17), the Government's Response thereto (docket no. 25), and Defendant's Memorandum in Support of Motion to Suppress Evidence (docket no. 27), and after an evidentiary hearing on September 5, 2007, it is **ORDERED** that the Motion is **DENIED**.

BY THE COURT:

S/ BRUCE W. KAUFFMAN
**BRUCE W. KAUFFMAN, J.**